UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANGELO GRACE,<br><br>Plaintiff,<br><br>- against -<br><br>SGT. ALEXANDER ALVARADO, LT. BRIAN BODGE, MICHAEL CAPRA,<br><br>Defendants. | : | 21-CV-3578 (CS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
28 Liberty Street, 18th Floor
New York, New York 10005
(212) 416-8665

Bahiya Lawrence
Assistant Attorney General
Of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORTIES ....................iii

PRELIMINARY STATEMENT ....................1

STATEMENT OF ALLEGATIONS....................2

LEGAL STANDARD ....................3

ARGUMENT ....................4

POINT I PLAINTIFF FAILS TO STATE A RETALIATION CLAIM AGAINST DEFENDANT ALVARADO ....................4

POINT II PLAINTIFF FAILS TO STATE A FOURTH AMENDMENT CLAIM CONCERNING THE SEARCH OF HIS CELL ....................7

POINT III DEFENDANT CAPRA IS NOT ALLEGED TO HAVE BEEN PERSONALLY INVOLVED IN ANY ALLEGED CONSTITUTIONAL VIOLATION ...............9

POINT IV DEFENDANT'S ARE ENTITLED TO QUALIFIED IMMUNITY ...................10

POINT V PLAINTIFF'S CLAIMS FOR MONETARY DAMAGES AGAINST DEFENDANT'S IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT ....................11

CONCLUSION ....................12

## TABLE OF AUTHORITIES

**Case** **Page(s)**

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ....................................................................................3,9

Ayers v. Coughlin,
780 F.2d 205 (2d Cir. 1985) ....................................................................................9

Bacon v. Phelps,
961 F.3d 533 (2d Cir. 2020) ....................................................................................6

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ....................................................................................3

Burns v. Martuscello,
890 F.3d 77 (2d Cir. 2018) ....................................................................................5

Davis v. Goord,
320 F.3d 346 (2d Cir. 2003) ....................................................................................5

Dawes v. Walker.
239 F.3d 489 (2d Cir. 2001) ....................................................................................5,7

D.F. ex rel. Finkle v. Board of Education of Syosset Cent. Sch. Dist.,
386 F.Supp.2d 119 (E.D.N.Y.2005) ....................................................................................5

Edwards v. Daniels,
No. 17 Civ. 05018, 2020 WL 3057412 (S.D.N.Y. Jun. 9, 2020) ....................................................................................8

Gill v. Pidlypchak,
389 F.3d 379 (2d Cir. 2004) ....................................................................................4

Giano v. Senkowski,
54 F. 3d 1050 (2d Cir. 1995) ....................................................................................5

Gonzalez v. City of Schenedctady,
728 F.3d 149 (2d Cir. 2013) ....................................................................................10-11

Grullon v. City of New Haven,
720 F.3d 133 (2d Cir. 2013) ....................................................................................9

Hudson v. Palmer,
468 U.S. 517 (1984) ....................................................................................7-8

Huminski v. Corsones,
386 F.3d 116 (2d Cir. 2004) ....................................................................................12

Hynes v. Squillance,
143 F.3d 65 (2d Cir. 1998) ........................................................................................6

Jackson v. County of Rockland,
450 Fed. Appx. 15 (2d Cir. 2011) ..............................................................................4

Kassner v. 2nd Avenue Delicatessen, Inc.,
496 F.3d 229 (2d Cir. 2007) ........................................................................................4

Lapides v. Bd. of Regents,
535 U.S. 613 (2002) ..................................................................................................12

Lopez v. Reynolds,
998 F. Supp. 252 (W.D.N.Y. 1997) ...........................................................................8

Malley v. Briggs,
475 U.S. 335 (1986) ..................................................................................................10

Messerschmidt v. Millender,
565 U.S. 535 (2012) ..................................................................................................10

Milo v. City of New York,
59 F. Supp. 3d 513 (E.D.N.Y. 2014) .......................................................................5-6

Nat'l Coal. on Black Civic Participation v. Wohl,
512 F. Supp. 3d 500 (S.D.N.Y. 2021) ......................................................................11

Pearson v. Callahan,
555 U.S. 223 (2009) ..................................................................................................10

R.A.V. v. St. Paul,
505 U.S. 377 (1992) ....................................................................................................6

Reichle v. Howards,
566 U.S. 658 (2012) ..................................................................................................10

Roseboro v. Gillespie,
791 F. Supp. 2d 353 (S.D.N.Y. 2011) ........................................................................4

Shomo v. City of New York,
579 F.3d 176 (2d Cir. 2009) ........................................................................................9

Smith v. Miller,
No. 15 Civ. 9561, 2017 WL 4838322 (S.D.N.Y. Oct. 23, 2017) ....................................2

Spavone v. New York State Dep't of Corr. Servs.,
719 F.3d 127 (2d Cir. 2013) ..........................................................................10-11

Tangreti v. Bachmann,
983 F.3d 609 (2d Cir. 2020) ..............................................................................9

United States v. Turner,
720 F.3d 411 (2d Cir. 2013) ..............................................................................11

Virginia v. Black,
538 U.S. 343 (2003) ..........................................................................................6

Will v. Michigan Dep't of State Police,
491 U.S. 58 (1989) ..........................................................................................12

Willis v. Artuz,
301 F.3d 65 (2d Cir. 2002) ................................................................................8

Williams v. Dubray,
557 Fed. Appx. 84 (2d Cir. 2014) .......................................................................7

**United States Constitution**

First Amendment ....................................................................................................5-6
Fourth Amendment .................................................................................................7-8

**Federal Statutes**

42 U.S.C. 1983 ..............................................................................................7-9, 12

**Federal Rules of Civil Procedure**

12(b)(6)...........................................................................................................3

## PRELIMINARY STATEMENT

Defendants Superintendent Michael Capra and Sergeant Alexander Alvarado ("Defendants"), [1] by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Amended Complaint fails to state a First Amendment retaliation claim. There is no factual basis whatsoever to support Plaintiff's claim that Defendant Alvarado retaliated against him. Plaintiff affirmatively pleads that he engaged in the behavior charged in his misbehavior report. Plaintiff's threats against corrections officers is simply not protected speech under the First Amendment. Additionally, there is no Fourth Amendment protection against searches of incarcerated individuals, thus Plaintiff's claims challenging his cell search is also meritless. Furthermore, to the extent Plaintiff contends that staff failed to follow department guidelines in carrying out the cell search, the Constitution is not implicated by an alleged violation of a prison created directive.

Additionally, all claims against Defendant Capra should be dismissed as there are no facts that establish his personal involvement in any alleged constitutional violations. Defendants, at a minimum, are also entitled to qualified immunity on Plaintiff's claims because Plaintiff has failed to allege the violation of a federal right that was clearly established at the time of the alleged incident. Finally, the Eleventh Amendment bars any claims against Defendants in their official capacities.

[1] The Court dismissed the due process claim against prior Defendant Bodge sua sponte on the grounds that Plaintiff did not allege deprivation of a liberty interest. (Docket No. 9., at 2).

## STATEMENT OF THE ALLEGATIONS[2]

Plaintiff alleges that, on or about January 26, 2021, while he was housed at Sing Sing Correctional Facility ("Sing Sing"), he was asleep in his cell when two correctional officers ran into his cell and stood over him for several seconds, causing him to awake in a panic as if he was attacked. (Plaintiff's Amended Complaint ("AC") at 4).[3] Plaintiff alleges he was told that the correction officers were conducting a random cell search. (Id.). Plaintiff alleges after the cell search was complete, he spoke with the area supervisor, Defendant Alvarado about the cell search. (Id.).

Plaintiff further alleges that he filed a grievance regarding the cell search, on or about January 27, 2021. (Id.).[4] The grievance was forwarded by the Inmate Grievance Program Supervisor to Sgt. Alvarado for a response. (Id.) On or about February 11, 2021, during a conversation with Plaintiff, Defendant Alvarado allegedly stated, "next time me and my officer's come to your cell we're going to beat the shit out of you. I got something for you!" (Id.).

Plaintiff further alleges that on or about February 12, 2021[5], he was served with a misbehavior report by C.O.H. Burnett and the report was authored by Sgt. Alvarado. (Id.). Plaintiff alleges that on or about February 13, 2021, he was informed by an unnamed officer that

---

[2] The plausible and non-conclusory factual allegations of Plaintiff's Complaint are accepted as true only for purposes of this motion. Defendants do not concede the truth of any of Plaintiff's allegations.

[3] Defendants are moving against the Amended Complaint at Docket No. 2 as Plaintiff failed to file a Second Amended Complaint. The Amended Complaint appears to be incomplete in so far as there are pages missing from the copy that was docketed. (Docket No. 2). Specifically, the page containing Plaintiff's requested relief is missing and Defendant's cannot ascertain what relief Plaintiff seeks.

[4] Attached as Exhibit B to Plaintiff's Amended Complaint is an incomplete copy of his Inmate Grievance Complaint, it appears that a second page is missing. (See Docket No. 2 at 14). Defendants are including a full copy of this grievance to complete the record as Exhibit A. The Court may consider this document in light of Plaintiff including the first page of the grievance as part of his Amended Complaint. Smith v. Miller, No. 15 Civ. 9561, 2017 WL 4838322, at *5 (S.D.N.Y. Oct. 23, 2017) (courts can consider documents integral to the complaint) (citations omitted).

[5] Plaintiff's Exhibit B indicates that the referenced misbehavior report was served on February 13, 2021.

was he keep-lock and being issued a misbehavior report. (Id.). Further, Plaintiff alleges that on or about February 16, 2021, he was taken to the disciplinary office for a hearing on the misbehavior report. (Id. at 5). After the disciplinary hearing, Plaintiff was allegedly informed that he was being removed from keep-lock status and the misbehavior report was dismissed. (Id.).

On or about February 25, 2021, Plaintiff allegedly attended his grievance hearing where he was able to explain about the January 26, 2021 cell search incident and the alleged staff misconduct. (Id.). Further, Plaintiff states on the same date, his grievance was "passed thru on the grounds: The committee recommends that an administrative review be conducted to determine if cell searches are done in compliance with Department policy, procedure and guideline." (Id.).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Where a Plaintiff has failed to "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 570.

While a pro se Plaintiff's pleading should be construed liberally, it is otherwise analyzed under the same standards. Even in a pro se complaint, "merely conclusory allegations masquerading as factual conclusions" are insufficient to defeat a motion to dismiss. Jackson v. County of Rockland, 450 Fed. Appx. 15, 18, 19 (2d Cir. 2011). The court should not accept allegations that lack factual foundation or are conclusions of law. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (complaint inadequate if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action").

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO STATE A RETALIATION CLAIM AGAINST DEFENDANT ALVARADO

Plaintiff alleges that Defendant Alvarado retaliated against him by issuing a misbehavior report in response to the grievance Plaintiff filed complaining about a random cell search on January 26, 2021. (AC at 4). This claim is completely meritless – Plaintiff's speech was not protected and Plaintiff affirmatively pleads he engaged in the charged misconduct.

"For a retaliation claim, Plaintiff must plead factual allegations establishing: (1) that the speech or conduct was protected; (2) that the defendant took adverse action; and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379-80 (2d Cir. 2004). A causal connection can be demonstrated by: (i) close temporal proximity between the protected act and the alleged retaliatory act; (ii) the inmate's prior clean disciplinary record; (iii) vindication at a hearing; and (iv) statements by the defendant concerning motivation. Roseboro v. Gillespie 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011). "Only retaliatory conduct that would deter a similarly situated individual of ordinary

firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001). This is especially true in the prison context, where "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." Id.

The Second Circuit has recognized that an incarcerated individual's claims of retaliation should be viewed "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official … can be characterized as a constitutionally proscribed retaliatory act." Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003); Burns v. Martuscello, 890 F.3d 77, 87 (2d Cir. 2018) (And, as we have observed, "prison officials must be given latitude to anticipate the probable consequences of certain speech, and must be allowed to take reasonable steps to forestall violence.") (quoting Giano v. Senkowski, 54 F.3d 1050, 1055 (2d Cir. 1995) ) (internal punctuation omitted).

Courts in this circuit have found that "[f]reedom of speech ... is not an unfettered right for any U.S. citizen." Milo v. City of New York, 59 F. Supp. 3d 513, 522 (E.D.N.Y. 2014) quoting D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist., 386 F.Supp.2d 119, 125 (E.D.N.Y. 2005), aff'd sub nom. D.F. v. Board. of Educ. of Syosset Cent. Sch. Dist., 180 Fed. Appx. 232 (2d Cir. 2006). "Speech that constitutes a true threat of violence, by being a serious expression of an intent to cause present or future harm, may be prohibited." Milo, 59 F. Supp. 3d at 523. In Milo, the Court held that Plaintiff's statement, "[I]f I had a trench coat and a shotgun, it would be Columbine all over again" was not protected by the First Amendment; and that speech on schoolhouse grounds that threatens the prospect of danger to the school population is

also not protected. Milo, 59 F. Supp. 3d at 518, 527. See also Virginia v. Black, 538 U.S. 343, 359–60 (2003) (The speaker of a true threat does not need to have the intention of carrying out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur.").

Here, Plaintiff's retaliation claim is nigh-frivolous because he affirmatively pleads that he engaged in the charged behavior. In the grievance at issue, Plaintiff stated: "I am letting [you] know that I am not responsible for any incident that takes place should they run in my cell ever again while I am asleep. I will not hold back I'm going to take it as a sign of threat and attacks and will defend myself at all cost." (AC at 4-5, Exhibit B and Defendants Exhibit A). Such threats of violence against correction officers are not protected speech. "Letters containing a threat is not protected by the First Amendment" and "a prisoner's use of abusive or threatening language is also unprotected." Bacon v. Phelps, 961 F.3d 533, 543 (2d Cir. 2020); R.A.V. v. St. Paul, 505 U.S. 377, 388 (1992) ("threats of violence are outside the First Amendment"). Accordingly, Plaintiff's claim for retaliation fails because his threat of physical violence against correction officers, as detailed in his grievance, was not protected speech.

In any event, where "it was undisputed that [the incarcerated individual plaintiff] had in fact committed the prohibited conduct" for which he had been cited in a misbehavior report," this defeats any retaliation claim. Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998) (concluding that plaintiff's admission of the underlying conduct established a "proper, non-retaliatory reason [ ] for filing the misbehavior report"). There was a non-retaliatory motive for the misbehavior report, Defendant Alvarado perceived Plaintiff's statement, "I am letting [you] know that I am not responsible for any incident that takes place should they run in my cell ever again while I am

asleep. I will not hold back I'm going to take it as a sign of threat and attacks and will defend myself at all cost" (AC at 4-5, Exhibit B and Defendants Exhibit A), to be a threat against the corrections staff. Plaintiff does not deny making this statement in the grievance, in fact, he affirmatively pleads it in his Amended Complaint.

Plaintiff's allegations are also constitutionally de minimis because they do not rise to the level of a constitutional violation. Dawes, at 493. In fact, Plaintiff was far from deterred by Defendant Alvarado's conduct because Plaintiff states that in February 2021, after receipt of the misbehavior report, he attended a grievance hearing to further address his concerns about the alleged impropriety of the cell search procedures. (AC at 5). Furthermore, Plaintiff's allegation that Defendant Alvarado accosted him at his cell and stated, "next time me and my officer's come to your cell we're going to beat the shit out of you... I got something for you!," (AC at 4), also fails to state a claim. "[V]erbal harassment, without more, is not actionable under § 1983" in the prison setting. Williams v. Dubray, 557 Fed. Appx. 84, 86 (2d Cir. 2014).

Accordingly, Plaintiff's claims against Defendant Alvarado should be dismissed.

## POINT II

## PLAINTIFF FAILS TO STATE A FOURTH AMENDMENT CLAIM CONCERNING THE SEARCH OF HIS CELL

Plaintiff contends the random search of his cell in January 2021 was a violation of his Fourth Amendment rights. (AC at 4). However, Plaintiff's allegations fail to state a Fourth Amendment claim.

Periodic cell searches are so much an integral part of prison life that in Hudson v. Palmer, the United States Supreme Court held "[a] prisoner has no reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable

searches." Hudson v. Palmer, 468 U.S. 517 (1984). "It would be impossible to accomplish the prison objectives of preventing the introduction of weapons, drugs, and other contraband into the premises if inmates retained a right of privacy in their cells." Id. at 517–18. "The unpredictability that attends random searches of cells renders such searches perhaps the most effective weapon of the prison administrator in the fight against the proliferation of weapons, drugs, and other contraband. A requirement that random searches be conducted pursuant to an established plan would seriously undermine the effectiveness of this weapon." Hudson, at 517–18. Even cell searches "conducted solely for harassment" do not implicate the Fourth Amendment, Willis v. Artuz, 301 F.3d 65, 68–9 (2d Cir. 2002). Thus, Plaintiff's claim fails because an incarcerated individual has no reasonable expectation of privacy in his prison cell.

Plaintiff contends that staff members failed to follow the department guidelines set forth in Directive #4910. (AC at 5). However, this alleged failure is an insufficient ground to state a constitutional violation. Edwards v. Daniels, No. 17 Civ. 05018, 2020 WL 3057412, at *2 (S.D.N.Y. June 9, 2020). ("To the extent that [plaintiff] claims defendants failed to follow prison regulations, such as directives concerning the implementation of disturbance control plans or the failure to include the specific roles of other prisoners in the inmate misbehavior report, these state law violations are not cognizable under § 1983.") Lopez v. Reynolds, 998 F. Supp. 252, 259 (W.D.N.Y. 1997). ("A prison inmate does not have a viable § 1983 claim based solely on prison officials' failure to adhere to the requirements of prison regulations, directives or policy statements.").

Thus, Plaintiff's Fourth Amendment claims fails and should be dismissed.

## POINT III

## DEFENDANT CAPRA IS NOT ALLEGED TO HAVE BEEN PERSONALLY INVOLVED IN ANY CONSTITUTIONAL VIOLATION

Plaintiff has not alleged any facts to show that Defendant Capra was personally involved in any alleged constitutional violation. See Grullon v. City of New Haven, 720 F.3d 133, 138–39 (2d Cir. 2013) ("In order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show … the defendant's personal involvement in the alleged constitutional deprivation"). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2009). Additionally, to hold a prison official liable under § 1983 "requires a showing of more than the linkage in the prison chain of command." Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985). Instead, plaintiffs must allege non-conclusory facts sufficient to establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; Accord Tangreti v. Bachmann, 983 F.3d 609, 615-17 (2d Cir. 2020).

Here, there are no factual allegations whatsoever concerning Defendant Capra, in fact he is never mentioned in the Plaintiff's allegations and is only noted as being in attendance to an Inmate Liaison Committee meeting in February 2020. (AC at 3). Defendant Capra is sued simply because of the high-ranking position he holds as Superintendent of Sing Sing Correctional facility, and this allegation is insufficient to state a claim as a matter of law. See Ayers, 780 F.2d at 201. There are no facts alleged to show that Defendant Capra was personally involved in Plaintiff's alleged constitutional violations.

**POINT IV**

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013). In regard to the first prong of this test, it must be determined whether the plaintiff has alleged facts sufficient to show that the Defendant has violated a federally-protected right of the plaintiff. Even if the plaintiff can demonstrate the violation of a federal right, the Defendant is still entitled to qualified immunity if it would not have been clear to a reasonable official that the actions they took violated the plaintiff's clearly-established federal rights. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). When it is unclear to what extent the Circuit's decisions are consistent with Supreme Court authority, the right is not "clearly established" for qualified immunity purposes. Reichle v. Howards, 566 U.S. 658, 665-67 (2012).

Where "officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity thus "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012). A Defendant is also entitled to qualified immunity if a plaintiff fails to plead facts sufficient to show that the Defendant was personally involved in an alleged constitutional violation. Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135-36 (2d Cir. 2013).

Here, as set forth above, Plaintiff fails to plead a viable claim against either Defendants.

He thus, by definition, fails to allege facts to show that Defendants violated a federal right that was clearly established at the time of the various alleged incidents surrounding Plaintiff's cell search. Defendants are thus entitled to qualified immunity. See Gonzalez, 728 F.3d 149 at 154.

Additionally, a reasonable official in Defendant Alvarado's place could have believed that writing a misbehavior report charging Plaintiff with threats upon staff, which Plaintiff admits doing, which attached the grievance in which the threats were made, did not violate the Constitution. Nat'l Coal. on Black Civic Participation v. Wohl, 512 F. Supp. 3d 500, 513 (S.D.N.Y. 2021) ("Speech amounts to a 'true threat' when 'an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury.'")(quoting United States v. Turner, 720 F.3d 411, 420 (2d Cir. 2013)). Further, a reasonable official could have believed that the alleged unannounced cell search did not violate the Fourth Amendment because an incarcerated individual has no reasonable expectation of privacy in his prison cell.

Finally, Defendant Capra is entitled to qualified immunity for the additional reason that Plaintiff fails to allege any facts to show that Defendant Capra was personally involved in violating his First and Fourth Amendment rights. See Spavone, 719 F.3d 127 at 135-36 (an official who is not alleged to have been personally involved in a constitutional violation is entitled to qualified immunity).

## POINT V

## PLAINTIFF'S CLAIMS FOR MONETARY DAMAGES AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT

Plaintiff alleges that he is suing Defendants in their individual and official capacities, (AC, caption). It is well settled that a plaintiff cannot sue state officers in their official capacities

for monetary damages under § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989) (a State is not a "person" within the meaning of § 1983); see also Lapides v. Bd. of Regents, 535 U.S. 613, 617 (2002). A suit under § 1983 against a state official in his or her official capacity is deemed to be against the State, and is thus barred. See Will, 491 U.S. at 71; Huminski v. Corsones, 386 F.3d 116, 133 (2d Cir. 2004). Therefore, Plaintiff's § 1983 claims against defendants in their official capacities must be dismissed.

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court grant their motion to dismiss in its entirety and grant such other relief as the Court deems just and proper.

Dated: New York, New York
April 15, 2022

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
By:
/s/ *Bahiya Lawrence*
Bahiya Lawrence
Assistant Attorney General
28 Liberty Street, 18th Floor
New York, NY 10005
(212) 416-8665
Bahiya.Lawrence@ag.ny.gov

cc: Angelo Grace
DIN 11-A-1499
Gouverneur Correctional Facility
(via First Class Mail)