UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANGELO GRACE,

                                    Plaintiff,                    **OPINION & ORDER**

        - against -                                              No. 21-CV-3578 (CS)

SERGEANT ALEXANDER ALVARADO,

                                    Defendant.
------------------------------------------------------------x

Appearances:

Angelo Grace
Gouverneur, New York
*Pro Se Plaintiff*

S. Cynthia Luo
Assistant Attorney General
New York State Office of the Attorney General
New York, New York
*Counsel for Defendant*

Seibel, J.

        Before the Court is Defendant's motion for summary judgment.  (ECF No. 46.)  For the

following reasons, the motion is GRANTED.

I.      **BACKGROUND**

        The following facts are based on Defendant's Local Civil Rule ("LR") 56.1 Statement,

(ECF No. 48 ("D's 56.1 Stmt.")), Plaintiff's declaration in opposition, (ECF No. 53 ("P's

Decl.")), and the supporting exhibits, and are undisputed unless otherwise noted.[1]

---

[1] In response to Defendant's LR 56.1 Statement, Plaintiff filed a declaration containing a
numbered list of factual allegations and a separate "statement of disputed factual issues."  (*See
generally* P's Decl.)  LR 56.1(c) provides that "[e]ach numbered paragraph in the statement of
material facts set forth in the [moving party's statement] will be deemed to be admitted for
purposes of the motion unless specifically controverted by a correspondingly numbered

A.  **Facts**

On the morning of January 26, 2021, while Plaintiff Angelo Grace was incarcerated by
the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing
Sing Correctional Facility, two officers entered his cell to conduct a cell search.  (D's 56.1 Stmt.
¶¶ 1, 3; P's Decl. at 2.)[2]  At the time, Plaintiff was asleep and "jumped up in a panic," but
complied with the search once he realized what the officers were doing.  (D's 56.1 Stmt. ¶ 15;
*see id.* ¶¶ 4-6; ECF No. 47-3 at 2; ECF No. 47-1 ("P's Depo.") at 53:25-55:16.)  After the search,
Plaintiff asked the gallery officer which sergeant was working on the block that day, and the
officer informed him that it was Defendant Sergeant Alexander Alvarado.  (D's 56.1 Stmt. ¶¶ 7-
8.)  Plaintiff went to Defendant, with whom he had had no issues before, and told him that he
thought the search was "illegal" and violated DOCCS's policy and rules, and that he planned to

---

paragraph in the [opposing party's statement]."  Loc. Civ. R. 56.1(c).  Plaintiff's list of factual
allegations, however, does not correspond with the numbered paragraphs in Defendant's
statement.  Thus, where Plaintiff does not meet his burden under Federal Rule of Civil Procedure
("FRCP") 56(c)(1) and LR 56.1(c) to cite particularized evidence showing a genuine dispute, the
Court deems Defendant's statements admitted if properly supported.  *See, e.g., Johnson v. City of
N.Y.*, No. 10-CV-6294, 2012 WL 1076008, at *3 (S.D.N.Y. Mar. 28, 2012) (district court is not
obligated "to perform an independent review of the record to find proof of a factual dispute").
(Unless otherwise indicated, case quotations omit all internal citations, quotation marks,
footnotes, and alterations.)  (The Court will send Plaintiff copies of all unpublished decisions
cited in this Opinion and Order.)  The Court acknowledges that Plaintiff is *pro se*, but where the
moving party has notified the *pro se* litigant of the requirements of FRCP 56 and LR 56.1, as
Defendant did here, (*see* ECF No. 50), the *pro se* litigant is "not excused from meeting the
requirements of Local Rule 56.1," *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y.
2009).  Nonetheless, "where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in
opposition to a summary judgment motion, the Court retains some discretion to consider the
substance of the plaintiff's arguments, where actually supported by evidentiary submissions."
*Id.*  In light of Plaintiff's *pro se* status, I have considered Plaintiff's declaration and "conducted
an independent review of all of the evidence submitted by both parties, so as to ascertain whether
the record actually reveals any material, disputed issues of fact."  *Id.*

[2] For ease of reference, citations to P's Decl., as well as ECF No. 47-3 (Plaintiff's inmate
grievance) and ECF No. 52 (Plaintiff's opposition brief ("P's Opp.")) use the page numbers
generated by the Court's Electronic Case Filing ("ECF") system.

file a grievance.  (*Id.* ¶¶ 9-11; *see* P's Decl. at 2.)  Defendant said the search was a new technique

and nothing personal, (P's Depo. at 56:6-24), but Plaintiff told Defendant:

> I'm going to file a grievance because if one of your officers come in there again, and I get
> into a fight, the only reason why I didn't get into a fight, I was wrapped in the covers and
> I couldn't break free fast enough.  Had my hands been free, it would've got physical.  So
> . . . to further to protect myself, I'm going to write a grievance so that this is all records.

(*Id.* at 57:5-12.)  After speaking with Defendant, Plaintiff called the Prison Rape Elimination Act

hotline and was advised to file a grievance, which he did on January 27, 2021.  (D's 56.1 Stmt.

¶¶ 13-14; P's Decl. at 2; *see* ECF No. 47-3.)  In the grievance, Plaintiff stated:

> "They almost caused a very bad situation . . . .  This is unlawful and wrong and
> should not be happening.  This [tactic] do[es] not co-inside [*sic*] with the policy
> search and procedure 4910[.]  Therefore it is not legal for them to just make up
> there [*sic*] own rule's [*sic*] and apply them as if they are part of the policy and
> searching procedure.  So for that reason [I'm] letting you know that [I'm] not
> responsible for any incident that take's [*sic*] place should they run in my cell ever
> again while [I'm] asleep.  I will not hold back [I'm] going to take it as a sign of
> threat, and attacks, and will defend myself at all cost."

(ECF No. 47-3 at 2-3; *see* D's 56.1 Stmt. ¶¶ 15-16.)

The Inmate Grievance Program ("IGP") received the grievance on February 2, 2021, (D's

56.1 Stmt. ¶ 14), and the IGP supervisor forwarded it to Defendant for his review on February

11, 2021 at 2:18 p.m., (ECF No. 47-6).  Plaintiff testified that on February 11 around 6:40 p.m.,

Defendant passed by his cell, asked his name, and said, "[W]hy did you file the grievance after I

spoke to you and I told you it wasn't personal[?]"  (P's Depo. at 62:2-10.)  In his declaration,

Plaintiff also asserts that Defendant accosted him at his cell "to retaliate, harass, threaten and

intimidate [him] about the cell search and the grievance . . . filed against him," and that

Defendant told Plaintiff, "Next time me and my officers come to your cell, we're going to beat

the shit out of you," and "I got something for you."  (P's Decl. at 2-3; *see* P's Depo. at 62:2-

64:4.)

Plaintiff testified that on February 12 around 11 a.m., he was placed on keeplock status "pending a misbehavior report that [Defendant was] writing."  (P's Depo. at 64:2-17; 103:2-104:5).  The next day at around 4:10 pm, a correction officer served Plaintiff the Inmate Misbehavior Report ("MBR"), (ECF No. 47-4).  (D's 56.1 Stmt. ¶ 19; P's Decl. at 3; P's Depo. 96:16-21.)  In the MBR, Defendant stated that he had received the grievance report from the IGP supervisor on February 12 at approximately 10:00 a.m.  (ECF No. 47-4.)  The MBR also indicated that Plaintiff had committed a threat violation under Rule 102.10.  (*Id.*)  That rule provides that "[a]n incarcerated individual shall not, under any circumstances make any threat, spoken, in writing, or by gesture."  7 NYCRR § 270.2.  In the MBR, Defendant further wrote:

> On this grievance Inmate Grace is threatening security staff.  Inmate Grace stated in his grievance "I am letting [you] know that I am not responsible for any incident that takes place should they run in my cell ever again while I am asleep.  I will not hold back I'm going to take it as a sign of threat and attacks, and will defend myself at all cost."

(*Id.*; D's 56.1 Stmt. ¶ 18; P's Decl. at 3.)

On February 14, 2021, Defendant stated in an email to the IGP supervisor that, in the grievance, Plaintiff "mentions threatening staff," and that Defendant "was directed to issue [Plaintiff] a misbehavior report and he is currently confined for the grievance he submitted."  (ECF No. 47-6; *see* D's 56.1 Stmt. ¶ 20.)  On February 16, 2021, there was a disciplinary hearing regarding the charge of threats, which was administratively dismissed.  (D's 56.1 Stmt. ¶ 21; P's Decl. at 4; ECF No. 47-7.)  Shortly after the hearing on the 16th, Plaintiff was released from keeplock.  (P's Depo. at 65:21-66:13.)

At his deposition, Plaintiff testified, "I understand how [Defendant] could have took it as a threat," (*id*. at 100:12-13), and also stated that Defendant gave him a misbehavior report because "[Defendant] felt that [Plaintiff] was making a threat towards his officers in the grievance," (*id.* at 97:4-13).

On August 5, 2013, DOCCS had issued a memorandum that permitted the issuance of misbehavior reports when the language in a grievance report is "highly offensive or threatening," with approval of DOCCS' counsel.  (D's 56.1 Stmt. ¶ 27; ECF No. 47-12.)  The record does not reflect that Defendant got such approval.

    **B.**    <u>**Procedural History**</u>

On April 21, 2021, Plaintiff filed his Complaint suing Sergeant Alexander Alvarado, Lieutenant Brian Bodge, and Superintendent Michael Capra under 42 U.S.C. § 1983 for violations of the First, Eighth, and Fourteenth Amendments.  (ECF No. 2 at 1.)  The case was reassigned to the undersigned on July 29, 2021, and on July 30, 2021, the Court issued an order dismissing the claims against Bodge and ordering service on Alvarado and Capra.  (ECF No. 9.) On November 22, 2021, the Defendants filed a letter requesting a pre-motion conference in anticipation of a motion to dismiss, (ECF No. 16), and Plaintiff responded on December 20, 2021, (ECF No. 18).  On January 5, 2022, the Court held a pre-motion conference, at which it granted Plaintiff leave to amend his Complaint, (*see* Minute Entry dated Jan. 5, 2022), but Plaintiff did not do so.

On March 13, 2023, the Court granted in part and denied in part Defendants' motion to dismiss.  (Minute Entry dated Mar. 13, 2023.)  Plaintiff's retaliation claim against Alvarado survived the motion, but the Court dismissed Plaintiff's claims against Capra for lack of personal involvement and Plaintiff's Eighth and Fourteenth Amendment claims.  (*See id.*)

On October 3, 2023, Defendant submitted a pre-motion letter in anticipation of a motion for summary judgment.  (ECF No. 44.)  The Court held a pre-motion conference on October 24, 2023, at which it set a briefing schedule.  (Minute Entry dated Oct. 24, 2023.)  The instant motion followed.  (ECF No. 46.)

II.     **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of

material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence

sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d

Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The mere existence of a

scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at

252.  Moreover, the non-movant "must do more than simply show that there is some

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated

speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

"A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by:  citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . .

admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  Where an

affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). If "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

In addition, *pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). As mentioned, even though Plaintiff's declaration did not contest the facts set forth above, in light of Plaintiff's *pro se* status, I have thoroughly examined the record to determine whether any material issues of fact remain for trial. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (Even where the opposing party fails to submit evidence disputing moving party's factual presentation, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."); *Buckley v. County of Suffolk*, No. 10-CV-1110, 2013 WL 122972, at *1 (E.D.N.Y. Jan. 9, 2013) (same).

## III.   <u>DISCUSSION</u>

Defendant argues that he is entitled to summary judgment on Plaintiff's retaliation claim because Defendant issued the MBR in response to Plaintiff's written threats, which are not protected speech under the First Amendment. (ECF No. 49 ("D's Mem.") at 1, 6.) Defendant

also argues that even if the MBR was issued as retaliation for protected speech, Plaintiff has no

claim because the MBR would have been issued even absent that motivation.  (*Id.* at 1, 5-6.)

Finally, Defendant argues that he is entitled to qualified immunity because there is no clearly

established law indicating that issuing a misbehavior report in response to a written threat

violates the First Amendment, and Defendant issued the misbehavior report pursuant to DOCCS

policy.  (*Id.* at 1, 6-8.)  Plaintiff argues that he has established a First Amendment violation

because his speech and conduct in filing the grievance was protected, and Defendant retaliated

against him by threatening him, confining him to his cell, and filing a misbehavior report against

him.  (ECF No. 52 ("P's Opp.") at 8.)

      The Second Circuit has instructed district courts to "approach prisoner retaliation claims

with skepticism and particular care, because virtually any adverse action taken against a prisoner

by a prison official – even those otherwise not rising to the level of a constitutional violation –

can be characterized as a constitutionally proscribed retaliatory act."  *Dolan v. Connolly*, 794

F.3d 290, 295 (2d Cir. 2015); *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)

("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for

every decision they dislike."); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995) (skepticism

warranted by "near inevitability of decisions and actions by prison officials to which prisoners

will take exception and the ease with which claims of retaliation may be fabricated"), *abrogated

on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).

      "To establish a First Amendment retaliation claim, a plaintiff must show (1) that the

speech or conduct at issue was protected, (2) that the defendant took adverse action against the

plaintiff, and (3) that there was a causal connection between the protected speech and the adverse

action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).  In *Mount Healthy School District v.*

*Doyle*, 429 U.S. 274 (1977), "the Supreme Court established the standard for a § 1983 claim that the state actor retaliated against a plaintiff for exercising a constitutional right." *Graham*, 89 F.3d at 79. "In short, [Plaintiff's] claim will not survive summary judgment . . . if he does not meet the burden of demonstrating two genuine issues of material fact:  (1) that the disciplined conduct was constitutionally protected, and (2) that his punishment was motivated, in whole or in part, by his conduct – in other words, that the prison officials' actions were substantially improper retaliation." *Id.* at 80. "Assuming [Plaintiff] meets his burden, his claim will still not survive summary judgment under *Mount Healthy* if the defendants meet their burden of showing that there is no genuine issue as to the fact that [Plaintiff] would have received the same punishment even if they had not been improperly motivated." *Id.* "If the defendant meets this burden, summary judgment is appropriate." *Vidal v. Valentin*, No. 16-CV-5745, 2019 WL 3219442, at *6 (S.D.N.Y. July 17, 2019). "In other words, regardless of the presence of retaliatory motive, a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without the improper motivation the alleged retaliatory action would have occurred." *Id.*; *see Morgan v. Dzurenda*, No. 14-CV-966, 2017 WL 1217092, at *14 (D. Conn. Mar. 31, 2017) ("To the extent that the adverse action was taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.").

The defendant can meet the burden of showing that the plaintiff would have received the same punishment absent the improper motivation "by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (*per curiam*) (summary judgment proper because evidence that

plaintiff committed prohibited conduct charged in MBR carried defendants' burden of showing

proper, non-retaliatory motive); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994) (defendants

met their burden when "it was undisputed that [the plaintiff] had in fact committed the prohibited

conduct"). "[T]he conclusion that the state action would have been taken in the absence of

improper motives is readily drawn in the context of prison administration where we have been

cautioned to recognize that prison officials have broad administrative and discretionary authority

over the institutions they manage." *Lowrance*, 20 F.3d at 535. "Courts must afford substantial

deference to judgments made in often ambiguous circumstances." *Nicholas v. Tucker*, 89 F.

Supp. 2d 475, 480 (S.D.N.Y. 2000), *aff'd*, 40 F. App'x 642 (2d Cir. 2002) (summary order).

"Nevertheless, deference does not require turning a blind eye to violations of the Constitution."

*Id.*

Generally speaking, filing complaints against correction officers is protected activity.

*See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) ("[Plaintiff] has sufficiently alleged . . .

participation in protected activity:  the use of the prison grievance system."); *Franco v. Kelly*,

854 F.2d 584, 589 (2d Cir. 1988) ("[I]ntentional obstruction of a prisoner's right to seek redress

of grievances is precisely the sort of oppression that section 1983 is intended to remedy.");

*Morgan*, 2017 WL 1217092, at *12 ("The filing of grievances is a constitutionally protected

activity . . . ."); *Pledger v. Hudson*, No. 99-CV-2167, 2005 WL 736228, at *4 (S.D.N.Y. Mar.

31, 2005) ("A prisoner's filing of an internal prison complaint against an officer is protected by

the First Amendment . . . .").

But confrontational, disrespectful or threatening speech toward correctional officers,

including threats of violence, is not protected by the First Amendment. *See Tafari v. McCarthy*,

714 F. Supp. 2d 317, 372 n.32 (N.D.N.Y. 2010) (threats and harassment "do not qualify as

protected speech or conduct, because Plaintiff has no constitutionally protected right to threaten a

staff member with physical violence"); *Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 215

(N.D.N.Y. 2008) ("[P]rofane language, and confrontational speech and conduct against

correctional staff placed [plaintiff] in violation of valid prison regulations – thus placing his

speech and conduct outside the protection of the First Amendment, and providing defendants

with legitimate, non-retaliatory reasons for disciplining him.  [Plaintiff] does not argue, nor could

he, that he has a First Amendment right, as a prisoner, to use obscene, disrespectful language in

addressing correctional staff."); *Jermosen v. Coughlin*, 878 F. Supp. 444, 450 (N.D.N.Y. 1995)

("[P]laintiff uses threatening and abusive language as a matter of course.  Such expression finds

little protection under the first amendment.").

Notwithstanding Plaintiff's eleventh-hour attempt to reframe the threatening language as

a threat to file lawsuits, (*see* P's Decl. at 4 (describing language in grievance as "i.e. Plaintiff will

not hold back from litigating his rights and will defend (protect) himself at all cost in

litigation")), not only did he make plain in his deposition that he intended to warn of physical

altercations, (P's Depo. at 57:4-12, 86:15-87:20), but Plaintiff's intent is irrelevant.  What is

relevant is how his words were reasonably perceived by Defendant, and they plainly constitute,

or at the very least are reasonably interpreted as constituting, a threat of violence.  Plaintiff

himself stated that he understood how Defendant could perceive his statements as a threat, (P's

Depo. at 97:14-98:8, 100:12-13), and such an understanding on Defendant's part was particularly

appropriate here, given that Plaintiff had already told Defendant verbally a physical fight would

ensue if another similar cell search were conducted.  There is no dispute that the threatening

language in the MBR is unprotected by the First Amendment.  Therefore, as I determined at the

motion to dismiss stage, Plaintiff's retaliation claim would fail to the extent the alleged activity is

the threatening speech.  Plaintiff, however, argues that the protected conduct was the filing of the grievance itself.  I will assume for purposes of the motion that this presents a dispute of fact.  *See Graham*, 89 F.3d at 80.

As to adverse action, the verbal threats Plaintiff cites do not suffice, as the Court also already determined at the motion to dismiss stage.  *See Bartley v. Collins*, No. 95-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action.") (collecting cases); *Treizon Lopez v. Semple*, No. 18-CV-1907, 2019 WL 2548136, at *4 (D. Conn. June 20, 2019) ("[T]his threat, alone, does not amount to retaliation under the First Amendment.  Indeed, courts in this Circuit have oft rejected similarly vague threats as insufficient to constitute adverse action for purposes of a retaliation claim.") (collecting cases).  The threats may be relevant in assessing Defendant's intent, but they do not support a claim of retaliation.

Nor does the issuance of the MBR itself.  "[T]he mere filing of a misbehavior report alone, without evidence of other repercussions, does not constitute an adverse action."  *Gilmore v. Blair*, No. 18-CV-463, 2020 WL 5792467, at *6 (N.D.N.Y. June 30, 2020), *report and recommendation adopted*, 2020 WL 5775203 (N.D.N.Y. Sept. 28, 2020).  "Typically, courts require a showing of additional punishment above the filing of a misbehavior report to find an adverse action."  *Vidal*, 2019 WL 3219442, at *8; *see Berry v. Tremblay*, No. 20-CV-177, 2021 WL 1575951, at *4 (N.D.N.Y. Apr. 22, 2021) ("Courts in this district have routinely found the mere filing of a misbehavior report alone, without evidence of other repercussions, does not constitute an adverse action."), *report and recommendation adopted*, 2021 WL 2580100 (N.D.N.Y. June 23, 2021).

Thus, if adverse action exists here, it is from the four days of keeplock.  Courts have found that being placed on keeplock status for short periods can be an adverse action.  *See e.g.*, *Marshall v. Griffin*, No. 18-CV-6673, 2020 WL 1244367, at *6 (S.D.N.Y. Mar. 16, 2020) (declining to find as a matter of law that six days of keeplock is not adverse action that would deter person of ordinary firmness from exercising constitutional rights); *Lugo v. Van Orden*, No. 07-CV-879, 2008 WL 2884925, at *5 (S.D.N.Y. July 23, 2008) ("[W]hile it is a close question with the facts presently before the court, this court is not prepared to hold in a summary judgment context, that plaintiff's five days of keeplock would never deter a prisoner of ordinary firmness from exercising his rights."); *Keesh v. Goord*, No. 04-CV-271, 2007 WL 2903682, at *10 (W.D.N.Y. Oct. 1, 2007) (declining to find as a matter of law that placing plaintiff in keeplock for one day, during which he may have missed meals, was not an adverse action).  I will assume for purposes of the motion that a reasonable jury could find that four days of keeplock "would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process."  *Gill*, 389 F.3d at 384.

That leaves causation.  To survive summary judgment, Plaintiff has to show a genuine issue of material fact with respect to whether the protected conduct was a substantial or motivating factor in his discipline.  Plaintiff has created a genuine issue of material fact as to whether Defendant issued the MBR and placed him in keeplock because of the threats or because Plaintiff filed a grievance.  Plaintiff testified that on February 11, Defendant accosted him, complained about the grievance, threatened to beat him, and said "I got something for you," which plausibly refers to the upcoming keeplock and MBR.  (P's Decl. at 2-3; *see* P's Depo. at 62:2-64:4.)  The next day, Defendant had Plaintiff placed on keeplock and issued the MBR.  (P's Depo. at 64:2-17; 103:2-104:5; ECF No. 47-4.)  That is sufficient to create an issue of fact as to

13

whether Defendant was motivated by anger over the grievance or by concern over the language justifiably interpreted as a threat.

But assuming Defendant had improper motivation, he is nevertheless entitled to summary judgment if he can show that "even without the improper motivation the alleged retaliatory action would have occurred." *Vidal*, 2019 WL 3219442, at *6; *Graham*, 89 F.3d at 80 (defendant can prevail by "showing that there is no genuine issue as to the fact that [plaintiff] would have received same punishment even if [defendant] had not been improperly motivated"); *Morgan*, 2017 WL 1217092, at *14 ("To the extent that the adverse action was taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone."); *Bartley*, 2006 WL 1289256, at *9 ("Summary judgment should be granted for the defendants if they can show that there is no genuine issue that they would have taken the same action – here, writing a misbehavior report that caused plaintiff to be put in keeplock for ten days – even without retaliatory motivation."). Defendant meets that burden here "by demonstrating that there is no dispute that the plaintiff committed . . . the prohibited conduct charged in the misbehavior report." *Gayle*, 313 F.3d at 682; *see Holland v. Goord*, 758 F.3d 215, 226 (2d Cir. 2014) ("The defendant official . . . bears the burden of establishing that the disciplinary action would have occurred even absent the retaliatory motivation, which he may satisfy by showing that the inmate committed the prohibited conduct charged in the misbehavior report.").

Plaintiff does not dispute that he wrote in the grievance the words that underlay the MBR, and any reasonable jury would find that they were reasonably interpreted as threatening. Because that shows that Plaintiff committed the prohibited conduct in the MBR, Defendant is entitled to summary judgment. *See, e.g.*, *King v. McIntyre*, No. 11-CV-1457, 2015 WL 1781256,

at *6 (N.D.N.Y. Apr. 8, 2015) (summary judgment on retaliation claim warranted where plaintiff admitted to having committed conduct charged in MBR); *Murray v. Nephew*, No. 13-CV-186, 2015 WL 800072, at *6 (N.D.N.Y. Feb. 25, 2015) (same); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 373 (S.D.N.Y. 2011) (same); *Battice v. Phillip*, No. 04-CV-669, 2006 WL 2190565, at *8 (E.D.N.Y. Aug. 2, 2006) (same).

Accordingly, Defendant's motion for summary judgment is granted.[3]

IV.    **CONCLUSION**

For the foregoing reasons, Defendant's motion is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 46), enter judgment for Defendant, and close the case.

**SO ORDERED.**

Dated:  April 29, 2024
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[3] I thus need not address Defendant's argument that he is entitled to qualified immunity. *See Collins v. Goord*, 581 F. Supp. 2d 563, 579-80 (S.D.N.Y. 2008) ("If the plaintiff's constitutional claims . . . have already been disposed of in a motion for summary judgment, the Court need not reach the question of qualified immunity."); *Bartley*, 2006 WL 1289256, at *9 ("Because the claims against defendants are otherwise dismissed, the Court need not address defendants' assertion of qualified immunity.").